Emmajean HINES, Nancy Winters, and Nay Anderson, Plaintiffs,

v.

MARION COUNTY ELECTION BOARD, and its members in their official capacity, Lawrence Township Board, and its members in their official capacity, Robert Hendrickson, George Jardine, and George Lynch, individually and in their official capacities as members of the Lawrence Township Board, Defendants.

Stephen L. WARREN, Beverly A. Warren, Willis A. Brent, and Willie Larkins, Plaintiffs,

v.

The WASHINGTON TOWNSHIP BOARD, J. Murray Clark, Richard Tewksberry, and Yvonne Rogers–Garvey, each in their official capacities as members of the Washington Township Board, The Marion County Election Board, John Schwartz, Faye Mowery, and J. Murray Clark, each in their official capacities as members of the Marion County Election Board, Defendants.

Nos. IP 92–1727–C M/S, IP 92–1479–C M/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 27, 1995.

Stephen Laudig, Laudig & George, Indianapolis, IN, Gary P. Price, Lewis and Kappes, Indianapolis, IN, for Emmajean Hines, Nancy Winters, Nay Anderson.

Brian C. Bosma, Kroger, Gardis & Regas, Indianapolis, IN, for Election Board Marion County, Lawrence Township Board, Robert Hendrickson, George Jardine, George Lynch.

Douglas J. Webber, Webber & Barber, Indianapolis, IN, for Election Board Marion County.

William R. Groth, Fillenwarth Dennerline Groth & Baird, Indianapolis, IN, Stephen Laudig, Laudig & George, Indianapolis, IN, Gary P. Price, Lewis and Kappes, Indianapolis, IN, for Stephen L. Warren, Beverly A. Warren, Willis A. Brent, Willie Larkins.

W. Tobin McClamroch, Freihofer Minton Keeler & McClamroch, Indianapolis, IN, for Washington Township Board.

Brian C. Bosma, Kroger, Gardis & Regas, Indianapolis, IN, for Washington Township Board, Marion County Election Board.

### ORDER ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

MCKINNEY, District Judge.

### I. FACTUAL & PROCEDURAL BACKGROUND

In these consolidated cases, the plaintiffs, who are African–American voters in Lawrence and Washington Townships of Marion County, Indiana ("Voters"), sued their respective township boards (the "Township Defendants"), and the Marion County Election Board ("MCEB"), as well as members of the MCEB in their official capacities, for alleged violations of the Voting Rights Act (the "Act"). 42 U.S.C. § 1973 (1988). The gravamen of their complaints is that the township system of at-large elections of members of the township boards violates § 2 of the Act.[1]

The *Hines* Voters sought a declaration that the at-large system violated the Act, and the Fourteenth and Fifteenth Amendments to the Constitution, and therefore it should be declared void. These Voters also sought injunctive relief: an order requiring the defendants to cease conducting elections under this allegedly illegal system and to create a plan for redistricting the townships in conformance with the Act. In addition, the *Hines* Voters sought a permanent injunction ordering the defendants to construct single-member districts for elections to township board positions in a manner that would be in compliance with the Act. Finally, these plaintiffs sought damages, attorneys fees and costs to the extent the law allows.

The *Warren* Voters sought similar relief, with the exception that they wanted an injunction that contained an ultimatum. The order they sought would require the defendants to devise new districting plans that comply with the Act by the stated date. If they failed to do so, and if the Indiana General Assembly did not enact legislation correcting the problem, the Court would order its own single-member district plan be implemented.

The remaining facts of the underlying controversy have been sufficiently recounted in the Court's prior orders, and will not be repeated here. *See* Order of February 10, 1994, at 2–5; Order of February 22, 1994, at 2–4. This litigation began in December, 1992, survived a motion to dismiss the claim for attorney's fees and cross-motions for summary judgment, and by March, 1994, was effectively mooted by action of the Indiana General Assembly. The General Assembly passed House Enrolled Act 171, which provides that in townships in "a county having a population of more than seven hundred thousand (700,000)" (*i.e.* Marion County), the township board will be expanded to seven elected members (from three), and those members will be elected from single-member legislative body districts within the township. *See* I.C. §§ 36–6–6–2, 6–2.2, 6–2.5 (1994 Supp.). The new Indiana law took effect on July 1, 1994.

It is undisputed that with the passing of this law the Voters obtained the remedy they sought with respect to the at-large system of electing township board members. What is disputed, however, is whether that

---

1. Section 2 of the Voting Rights Act provides in pertinent part:

 No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by an State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen ... to vote on account of race or color....

42 U.S.C. § 1973(a). The Voters claim that at-large elections tend to dilute the vote of African–American minority voters within a township, when those members form a populous and geographically compact voting group that would constitute a majority in one of three equally populated and contiguous voting districts within the township. *Hines* Compl. ¶¶ 8, 12; *Warren* Compl. ¶¶ 20, 36.

makes the Voters "prevailing parties" against the defendants for purposes of entitlement to an award of attorney fees and costs pursuant to § 1973*l* (e) of the Voting Rights Act, 42 U.S.C. § 1973, and § 1988 of the Civil Rights Act of 1964, 42 U.S.C. § 1988(b). Both of these statutes allow the recovery, in the court's discretion, of a reasonable attorney's fee by a prevailing party, as part of the costs recovered in an action brought to enforce a provision of the Act, or other enumerated civil rights laws.[2]

On or about June 20, 1994, the Voters filed a petition for the award of costs, expenses and fees (the "Petition"), asking for a total of $218,705.22. Petition at 3. The MCEB Defendants filed a Motion To Dismiss Petition of Plaintiffs For Award of Costs, Expenses and Attorney Fees as to the Marion County Election Board on July 29, 1994. The Township Board Defendants filed a motion for summary judgment on the Petition on August 1, 1994. The issues have been fully briefed and the matter is now ripe for resolution.

## II. STANDARDS

### A. MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must take the plaintiff's well-pleaded allegations as true. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir. 1987). Additionally, the Court must view those allegations in the light most favorable to the plaintiff. *Id.* Generally, the complaint (or Petition) should be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Id.*

### B. SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992). As stated in *Celotex,* summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55; *see United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267–68 (7th Cir.1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991).

■ The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment; disputed facts must be outcome determinative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Schroeder v. Barth,* 969 F.2d 421, 423 (7th Cir.1992). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 360 (7th Cir.1992). Irrelevant or unnecessary facts do not preclude summary judgment even when in dispute. *Clifton v. Schaefer,* 969 F.2d 278, 281 (7th Cir.1992).

■ Moreover, a court may grant summary judgment *sua sponte* against the movant and in favor of a nonmovant, if the case warrants it and such action will not procedur-

---

2. Because these two provisions have nearly identical language and purposes, they are to be construed similarly. *Hastert v. Illinois State Bd. of Elec. Comm'rs.,* 28 F.3d 1430, 1439, n. 10 (7th Cir.1993). Likewise, even though both statutes suggest that the court has discretion in awarding fees, such discretion is narrow, because Congress has made clear that if a person is a prevailing party, fees should be awarded unless such award would be unjust. *Id.* at 1439, 1443.

ally prejudice the movant. *See Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 (district courts are "widely acknowledged" to have power to enter summary judgment *sua sponte* ); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (it is desirable for court to "cut through mere outworn procedural niceties" and make the same decision it would have made if the nonmovant had filed a cross-motion for summary judgment); *Dayton Elec. Mfg., Co. v. APCOM, Inc.,* 782 F.Supp. 389, 394 (N.D.Ill. 1992) (reasoning that Seventh Circuit would allow *sua sponte* grant of summary judgment against movant under certain circumstances); *see also* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2720, pp. 28–29 (1983). Generally, a movant is not procedurally prejudiced when summary judgment is granted against him or her on the very issues on which summary judgment was sought. *Coach Leatherware,* 933 F.2d at 167 (noting that summary judgment against the movant was proper when movant contended no issues of material fact, and the movant had significant incentive to put forward its proof on the issue).

### C. PREVAILING PARTY STATUS

 When deciding whether to award attorney's fees and costs in a voting rights case, a court must first determine whether the plaintiff was a "prevailing party" in the litigation. Only prevailing parties are entitled to attorney's fees under the Voting Rights Act or the Civil Rights Act. *See* 42 U.S.C. § 1973*l* (e) and § 1988(b); *Farrar v. Hobby,* 506 U.S. 103, 109–11, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992). Plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar,* 506 U.S. at 109–11, 113 S.Ct. at 572 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). If a defendant has not been prevailed against, either because of immunity or on the merits, a fee award is not authorized against that defendant. *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985)). To be entitled to an award of attorney's fees, the plaintiff must

have obtained relief on the merits that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar,* 506 U.S. at 112, 113 S.Ct. at 573. This standard applies when judgment has been entered for the plaintiff by a court. *Johnson v. LaFayette Fire Fighters Ass'n, Local 472,* 51 F.3d 726, 730 (7th Cir. 1995).

 In the event a defendant voluntarily changes position with respect to the plaintiff short of judgment, the plaintiff can still be deemed a prevailing party. *Id.; Zinn v. Shalala,* 35 F.3d 273, 274 (7th Cir. 1994). In such cases, two requirements must be met: 1) the plaintiff's suit must be causally linked to the achievement of the relief obtained; and 2) the defendant must not have acted wholly "gratuitously," which means the plaintiff's claim must not have been "frivolous, unreasonable or groundless." *Zinn,* 35 F.3d at 274. This approach is known as the catalyst rule. The district court makes a factual determination as to the causation of a defendant's change in behavior, and if genuine issues of material fact exist as to that issue, the court will hold an evidentiary hearing in which to resolve the factual disputes. *See Johnson,* 51 F.3d at 730; *Gekas v. Attorney Regis. and Disc. Comm.,* 793 F.2d 846, 850 (7th Cir.1986). "A suit is frivolous if it had no reasonable basis, whether in fact or in law." *Gekas,* 793 F.2d at 850.

### III. DISCUSSION

### A. SUMMARY OF ARGUMENTS

 The MCEB Defendants have moved to dismiss the fee petition on the grounds that the Voters are not "prevailing parties" against them, as evidenced by the fact that the Court dismissed them from this action in February, 1994. The Voters, however, contend that in its order this Court specifically reserved judgment as to whether MCEB should share in the payment of attorney fees, if warranted.

The Township Defendants' argue in their motion for summary judgment that the Voters are not prevailing parties because they

did not win any significant motions, they obtained no judicial relief, the Township Defendants have conceded no substantive points to them, the litigation was terminated by the Voters' voluntary, unilateral action, and the alleged relief came from a non-party as a result of the Voters' attorneys' lobbying efforts. In their Reply Brief, the Township Defendants raise the additional argument that the *remedy or relief* obtained was not available under the Voting Rights Act, that is, the Voters have failed to show that they were legally entitled to such relief under the Act. According to the Township Defendants, unless the defendant's change in behavior was required by the civil rights laws, the defendant is deemed to have acted gratuitously and the plaintiff has not prevailed in a legal sense. Also for the first time in the Reply Brief, the Township Defendants asked the Court to hold an evidentiary hearing to determine the factual question of whether the lawsuit had any impact on the passage of the new Indiana law. Def's Reply Brief at 2–3.

The Voters respond to the Township Defendants' motion for summary judgment by noting that these Defendants have conceded the factual allegations of the Petition for purposes of this motion. Because that concession allows the Court to find a causal link between this litigation and the law passed by the General Assembly, the Voters argue that judgment as a matter of law in their favor is proper. In addition, the Voters point to the absence of any evidence or factual allegations provided by the Township Defendants to prove that the Voters' claims are frivolous, groundless or unreasonable. Those claims were certainly not taken as frivolous by the General Assembly, the Voters argue, and since they obtained the substance of what they sought, their claims should be taken as reasonable and they should be deemed prevailing parties and allowed to recover attorney's fees.

In so arguing, the Voters ask this Court to conclude that the present litigation was an "instrument of change" as described in *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). Because the lawsuit influenced both the shape and the passage of legislation by the General Assembly, and because that legislation forces the Township Defendants to materially alter their behavior in a way that benefits the Voters, the plaintiffs argue that this Court must deem them to be prevailing parties under both the *Farrar* test and the catalyst rule.

With respect to the Township Defendants' argument that the Voters voluntarily terminated this litigation, thus preventing the defendants from proving they had committed no legal wrong, the Voters contend that this is not the proper standard at this stage of the litigation. In light of the fact that the claims of the Voters have been addressed outside of the courtroom, the only relevance of an inquiry into the merits of the alleged Voting Rights Act violation is to determine if the Voters had a frivolous, groundless and unreasonable claim under that Act. The Voters argue that the Township Defendants have failed to make any such showing.

### B. ANALYSIS

#### 1. MCEB Defendants

To be considered a prevailing party the Voters must show that they succeeded on a significant issue in the litigation that achieved some benefit they sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In cases of multiple defendants, however, a determination as to whether a plaintiff is a prevailing party must be made against each defendant. *See Dickinson v. Indiana State Elec. Bd.*, 817 F.Supp. 737, 754 (S.D.Ind.1992). Just as in *Dickinson*, the MCEB defendants here "clearly won on the only issue that directly affects them," that is, they were dismissed from the action because this Court found that the relief the Voters sought could not be obtained from them. *Id.*; Order of February 10, 1994, at 6. Consequently, it cannot be said that the Voters are prevailing parties against the MCEB Defendants. Since a determination about whether a person is a prevailing party is the statutory threshold to be crossed before any further analysis is required about apportioning attorney fees among multiple defendants, the MCEB Defendants' motion to dismiss the petition should be **GRANTED.**

### 2. Township Board Defendants

The Township Board Defendants' arguments are primarily directed at attempting to prove that the Voters cannot be deemed prevailing parties because they did not prove their entitlement to a judgment under the Voting Rights Act.[3] However, the Supreme Court has directed federal courts to look not at what the plaintiff can obtain by judicial decree, but at the action taken by a defendant that gives the plaintiff the essence of what was sought. *Hewitt*, 482 U.S. at 760–61, 107 S.Ct. at 2675–76. A judicial decree is not the end, but the means to an end—"at the end of the rainbow lies not a judgment, but some action...." *Id.* When a defendant, "under pressure of the lawsuit," alters his conduct towards the plaintiff that was the basis for the suit, the plaintiff has prevailed. *Id.* That alteration of conduct is the proper equivalent of a judicial judgment, which would produce the same effect. *Id.* at 761, 107 S.Ct. at 2676–77.

The *Hewitt* guidelines reflect the spirit of the prevailing party inquiry. The court is not to just look at whether a legal theory prevailed, but at whether some alteration of the legal relationship between the parties occurred. If the alteration did occur, and if that alteration was the object of the lawsuit, then the plaintiff may be deemed a prevailing party if the two-part catalyst test is met. Because the Township Defendants conceded, for purposes of this motion, that the factual allegations of the Petition for fees are true, the Court is left with no reason to find that the following allegations are disputed:

1. By abolishing at-large elections for township boards in Marion County, S.B.–171 provides the same relief requested by the Plaintiffs in their respective lawsuits (Brf. in Supp. of Petition at 2);

2. In the 1991 session of the General Assembly, a similar House Bill did not receive a hearing in the Senate;

3. In October and December of 1992, the two lawsuits at issue were filed;

4. In 1993, Representative Mae Dickinson introduced a similar bill, but the General Assembly took no action;

5. In the 1994 session, Rep. Dickinson reintroduced her bill;

6. Also in the 1994 session, Senator Patricia Miller introduced Senate Bill 171 ("S.B. 171"), to expand township boards from three to seven members;

7. S.B. 171 passed the Senate, assigned to House Urban Affairs Committee in January, 1994;

8. Representative Crawford, who was aware of the pending lawsuits, suggested an amendment to S.B. 171 that would provide for district instead of at-large township board elections;

9. February, 1994, the suggested amendment was adopted by the Committee and this Court denied the parties' cross-motions for summary judgment;

10. After the denial of the cross-motions for summary judgment in this litigation, the House of Representatives adopted the amendment requiring district board elections;

11. March, 1994, the Senate backs down from its dissent in a Conference Committee and both House and Senate adopt the Conference Committee report;

12. March 18, 1994, Governor Bayh signed S.B. 171, as amended to include single-member district elections for townships in Marion County.

The new law requires the Township Boards to cease holding at-large elections, to

---

**3.** The Township Defendants' arguments are being entertained by the Court despite the complete failure of these defendants to comply with Local Rule 56.1, which requires the movant to include in its brief, or in an appendix to its brief, a "Statement of Material Facts" that it contends are not genuinely disputed. The movant *must* support its statement with appropriate citations to evidentiary materials. The Township Defendants provided the Court with exhibits in support of their motion, however no citation to these exhibits was provided in either the brief or a separate statement of material facts. The Court is left with the task of discerning the appropriate arguments to entertain without benefit of a designation to the evidentiary support for each argument.

create single-member districts in 1995, and to hold single-member district elections in 1996. *See* I.C. § 36–6–6–2.5. Consequently, the Township Defendants will alter their legal relationship with the Voters, who will benefit from that change by achieving at least some of the relief they sought. This Court finds sufficient evidence in the chronology to support a causal link between this litigation and the adoption of S.B. 171 by the Indiana General Assembly. Together, the causal relationship, the law's enactment, and its subsequent implementation by the Township Defendants, qualify the Voters as prevailing parties.

In an apparent misperception of the proper inquiry to employ when state law changes in favor of the voting rights plaintiffs, the Township Defendants contend that the Voters are not entitled to attorney's fees because the change was caused by a non-party to the suit. Further, the Defendants argue that the change was achieved by the Voters' attorneys' lobbying efforts, and not by the suit. However, re-districting cases are *sui generis,* and because of that unique status, traditional notions of who won and who lost have to be modified. *See Hastert v. Illinois State Bd. of Elections Com'rs,* 28 F.3d 1430, 1444 (7th Cir.1993) *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994).

In *Hastert,* the State Election Board argued that it did not have the power to change the law affecting congressional districting and thus grant the plaintiffs the relief they sought. The Board also argued that the plaintiff's efforts "merely shifted the legislative lobbying process ... to a federal judicial arena." *Id.* at 1443. The Seventh Circuit noted that although both arguments were true they did not change anything with respect to entitlement to attorney's fees. *Id.* Observing with regret that the Illinois General Assembly had failed to act to remedy the situation until after the *Hastert* plaintiffs filed suit, the court stated that the taxpayers would now have to pay for their legislature's "dereliction." *Id.* at 1444. Further, the court allowed that the State Board of Elec-

tions was a nominal defendant, with no interest in the outcome of the litigation, but that they may still be held liable for attorney fees to the prevailing parties in an action to enforce voting rights. *Id.* This is true even though the State Board of Elections "played no active role in the proceedings and agreed to enforce whatever [redistricting] plan the district court adopted, since fees may be taxed even against entities whose role is limited to enforcement of regulations they played no role in promulgating." *Id.,* n. 16 (citing *Crosby v. Bowling,* 683 F.2d 1068, 1073 (7th Cir.1982)).

When the discussion in *Hastert* is viewed in light of the Supreme Court's guidelines in *Farrar* and *Hewitt,* this Court is persuaded that it does not matter, for purposes of prevailing party analysis, that the Township Defendants could only administer the law passed by the General Assembly. Nor does it matter that the change in the defendants' behavior occurred by way of this lawsuit influencing a non-party to change the law the Township Boards must follow. The named defendants were the ones maintaining an allegedly illegal election system,[4] they were the ones in a position to either litigate or attempt to resolve the issues of this proceeding, and they are the ones who will now alter their behavior as a result of this suit. *See Dickinson,* 817 F.Supp. at 753, n. 36 (and cases cited therein). Consequently, they must bear the expense of an award of reasonable attorney's fees in favor of the Voters, who have been found to be prevailing parties against the Township Defendants.

Despite the Township Defendants' argument to the contrary, the degree of success on the merits goes to the reasonableness of the attorney's fees, not to the availability of a fee award. *See Farrar,* 506 U.S. at 113–14, 113 S.Ct. at 574; *Texas Teachers Ass'n. v. Garland,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Farrar,* 506 U.S. at 111,

---

4. When a court awards attorney fees in a civil rights case to a prevailing plaintiff, "it is awarding them against a violator of federal law." *See Hanrahan v. Hampton,* 446 U.S. 754, 758, 100

S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1979) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 418, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978)).

113 S.Ct. at 573; *Garland,* 489 U.S. at 792–93, 109 S.Ct. at 1493–94. That touchstone has been met here by the General Assembly's action that was at least partly in response to the pressures of this lawsuit, which action will now materially change the relationship between the Boards of Washington and Lawrence Townships and the Voters.

### IV. CONCLUSION

The MCEB Defendants' Motion to Dismiss the Fee Petition as it relates to them is well-taken because those defendants were dismissed from this action prior to any change in behavior that arguably gave the Voters at least some of the relief they sought. Consequently, as against MCEB, the Voters are not prevailing parties, and the Motion To Dismiss should be **GRANTED.** To the extent the MCEB Defendants' February 16, 1994, Motion for Reconsideration of this Court's February 10, 1994, Order of Dismissal remains pending, it should be and hereby is **DENIED.**

The Township Defendants' Motion for Summary Judgment on the issue of whether the Voters may be deemed prevailing parties under §§ 1973 and 1988 has demonstrated that there are no genuine issues of material fact and that the Voters are entitled to judgment as a matter of law. The Voters demonstrated in their Petition the factual basis for a finding that this litigation was causally linked to the adoption by the Indiana General Assembly of S.B. 171, which effectively provided the Voters with some of the relief they sought. The Township Defendants failed to offer any evidence to contradict those facts, nor did these Defendants provide any evidence on which to base a finding that the Voters' claims were frivolous. Consequently, this Court finds that the Voters achieved at least some of the relief they sought through the enactment of S.B. 171, and that this litigation was a significant catalyst for that enactment, which arguably changed the township election process in compliance with § 2 of the Voting Rights Act. 42 U.S.C. § 1973. Such findings support a determination that the Voters are prevailing parties for purposes of an attorney's fee award.

The Township Defendants' motion for summary judgment is **DENIED,** and the Court *sua sponte* **GRANTS** summary judgment in favor of the Plaintiffs/nonmovants on the issue of their status as prevailing parties. The remaining issues relating to reasonableness must be addressed after a hearing is held. Therefore, a hearing is hereby set for Thursday, November 16, 1995, at 9:00 a.m., in Courtroom 202, United States District Courthouse, for purposes of determining the reasonable and proper amount of attorney's fees to be awarded.

IT IS SO ORDERED.